■ MAGNUM REAL ESTATE SERVICES, INC., Respondent-Appellant, v 133-134-135 ASSOCIATES, LLC, et al., Appellants-Respondents. [962 NYS2d 15]—

Order, Supreme Court, New York County (Barbara R. Kapnick, J.), entered December 12, 2011, which denied defendants' motion for summary judgment dismissing the complaint, and denied plaintiff's cross motion for summary judgment as to the first, second and third causes of action, modified, on the law, to dismiss the first and second causes of action, and otherwise affirmed, without costs.

The written agreement upon which plaintiff seeks a success fee and certain real estate broker's commissions is unenforceable as vague, since the agreement fails to set the price or compensation to be received by plaintiff. Nor does it provide for a means to calculate same (*see Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp.*, 78 NY2d 88, 91-92 [1991]). As such, the IAS court should have granted defendants summary judgment on the two breach of contract claims.

With regard to plaintiff's claim for unjust enrichment, it was properly permitted to proceed, as there was no enforceable agreement regarding the same subject matter (*cf. IDT Corp. v*

*Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 142 [2009]). Moreover, fact issues preclude dismissal as to defendants Joseph Tahl and Tahl Propp Equities, LLC, as both apparently dealt directly with plaintiff on this transaction, and both are alleged to have benefitted from the transaction (*see Georgia Malone & Co., Inc. v Rieder*, 86 AD3d 406 [2011]). Concur—Mazzarelli, J.P., Manzanet-Daniels and Román, JJ.

Moskowitz, J., dissents in part and concurs in part in a memorandum as follows: I dissent to the extent the majority (1) dismisses the breach of contract claims as vague and unenforceable; (2) permits the unjust enrichment claims to proceed; and (3) retains the claims against defendant Tahl individually. Although the agreement here is hardly a model of clarity, the parties do not dispute the meaning of its salient terms. Thus, I would not dismiss the breach of contract claims as vague and unenforceable. However, because the parties' accountants disagree as to how to interpret the applicable financial documents and because the record is devoid of financial documents upon which the parties relied, summary judgment is not warranted. I would also dismiss the claims against defendant Tahl individually.

Plaintiff Magnum Real Estate Services, Inc. is a licensed real estate broker. On May 18, 2001, Magnum entered into a contract to purchase four mixed-use investment properties in Harlem for a purchase price of $1.9 million. In October 2001, Magnum assigned the contract of sale to 133-134-135 Street LLC (Street), a single-purpose limited liability company that defendants Joseph Tahl, Tahl-Propp Equities, and Tahl Propp Manhattan North Investors II, LLC allegedly control. In consideration for that assignment, Magnum received $85,000. The closing on Street's purchase of the properties occurred on or about October 10, 2001. Plaintiff claims it was supposed to have received additional consideration for the assignment that the parties memorialized in a memorandum to "Sony" that Tahl drafted, dated November 16, 2001 (the Post-Script). The Post-Script states in relevant part: "The above payment of $85,000.00 is a partial payment. You also will be compensated with a portion of re-finance proceeds *at closing of the re-financing above our total cost basis,* including acquisition and renovation cost, *upon the successful renovation, lease-up and re-financing of these properties.* It is expected that the above-payment plus a portion of refinance proceeds will total $250,000.00, plus leasing commissions of about $75,000.00, for total compensation of $325,000.00" (emphasis added).

Both parties agree, as the language of the Post-Script

indicates, that plaintiff was to receive payment once the properties showed a profit above defendants' total cost basis. As defined in the Post-Script, total cost basis is, essentially, the money defendants spent purchasing, renovating, leasing and refinancing the buildings.

Eventually, Street transferred three of the four properties to three other single purpose entities so that a separate company owned each property (collectively with Street, the Owners). Defendant Owners commenced renovations to improve the properties and refinanced several times to pay for those renovations. The last refinancing was in 2006. By the end of 2008, when renovations were substantially complete, defendant Owners had invested nearly $2 million in the renovations. In 2010 and 2011, during the pendency of this action, defendants sold the properties for $5,734,776.50.

Plaintiff then commenced this action for, among other things, breach of contract, asserting that it never received any refinance proceeds even though defendants refinanced the properties several times. It also asserted a cause of action for breach of a brokerage agreement, alleging that defendants refused to allow it to provide the contracted-for brokerage services for the apartments in the buildings.

Defendants moved for summary judgment dismissing the complaint, arguing that the properties always operated at a loss and they could no longer refinance after 2008 because the downturn in the real estate market left negative equity in the properties. Defendants contend that, minus the initial acquisition and closing costs of $2,123,676.00, the renovation costs of $2,655,295.77, operating losses of $2,619,915.74 and net depreciation of $1,180,244.77, they suffered an aggregate loss during ownership of $483,866.24. In support of their motion, defendants submitted the testimony of their accountant, Warren Schneider. According to Schneider, the post-2006 financial documents indicate that the properties continued to operate at a loss until defendants sold them.

In opposition and in support of its cross motion, plaintiff submitted an affidavit from its expert, certified public accountant Barry Leon. In his affidavit, Leon states that the properties yielded cash-out refinancing proceeds of approximately $2 million in 2006 and that defendants had recouped all the monies they put into the properties by the end of 2006. Despite plaintiff's expert's opinion, however, the financial documents in the record indicate that the properties operated at a loss for at least the years 2002, 2003, 2004, 2005 and 2006, at least when comparing rent rolls to operating expenses. Plaintiff concedes

that in 2006, the properties incurred $861,755 in operating costs and received only $588,069 in rents.

Although neither party submitted the post-2006 financial documents, they certainly exist because the accountants for both parties relied on those documents in rendering their opinions. Given the differing opinions of the accountants, both based on financial documents that are not part of the record, there is a question of fact precluding an award of summary judgment to either party. The parties agree on the Post-Script agreement's salient terms, i.e., that plaintiff was to receive $250,000 if defendants made enough money to recover their total cost basis. This means that plaintiff is entitled to refinancing proceeds only if, in fact, the investment yielded a profit. Thus, it is irrelevant that the agreement does not define the term "portion" or the means to calculate plaintiff's portion. The money is either there or it is not. Because it is not clear whether the properties yielded a profit, the motion court properly denied summary judgment to both parties.

It follows from the foregoing that plaintiff's claims for unjust enrichment should have been dismissed. It is axiomatic that a claim for unjust enrichment cannot stand where there is a contract governing the same subject matter (see *IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 142 [2009]).

I agree with the majority's decision to the extent it dismissed plaintiff's claims for brokerage fees. Plaintiff alleges that defendants thwarted its ability to earn commissions by refusing to allow plaintiff to perform brokerage services. Defendants contend that they stopped using plaintiff as a broker after receiving complaints. Even assuming the Post-Script constitutes a brokerage agreement, it lacks definite terms and therefore was terminable at will (see *Rooney v Tyson*, 91 NY2d 685, 689-692 [1998]). Moreover, plaintiff has not claimed that it procured any tenants for the properties without receiving a commission. Accordingly, the motion court should have granted summary judgment to defendants and dismissed the second cause of action for $75,000 in broker fees.

Finally, I would dismiss the claim against defendant Tahl. There is nothing in the record to indicate that Tahl intended to bind himself personally and plaintiff has not asserted allegations to pierce the corporate veil (see *Matias v Mondo Props. LLC*, 43 AD3d 367, 368 [1st Dept 2007]).